GELDNICH, Respondent, vs. BURG, imp., Appellant.

*April 30—October 14, 1930.*

For the appellant there was a brief by *Rouiller & Dougherty,* attorneys, and *Thomas A. Byrne* of counsel, all of Milwaukee, and oral argument by *C. F. Rouiller.*

For the respondent there was a brief by *Sawyer & Gehl* of Hartford, and oral argument by *E. J. Gehl.*

The following opinion was filed June 11, 1930:

OWEN, J. The defendant Leo Burg is the proprietor of a garage located about one mile from the village of Slinger.

Prior to the 18th day of October, 1927, he had employed the defendant Rottenbach, living in the village of Slinger, to work in said garage. In and by the terms of the contract of employment, he agreed to permit Rottenbach to use one of his cars in going back and forth from his home to his garage. While going from his home to the garage on the morning of October 18, 1927, his machine collided with a road grader being operated by the plaintiff, causing plaintiff personal injuries. The only question presented upon this appeal is whether at the time of the accident the automobile was being operated in the facilitation of the business of the defendant Burg so as to make him liable for the negligence of the defendant Rottenbach.

Under ordinary circumstances Rottenbach was, at the time, in the prosecution of his own business. Where an employee works for another at a given place of employment, and lives at home or boards himself, it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and his place of employment. (See cases cited in the dissenting opinion of TAYLOR, J., in *Ewald v. Chicago & N. W. R. Co.* 70 Wis. 420, 437, 36 N. W. 12, 591.) It has accordingly been held by this court that where an employer permitted an employee the use of a car in going to his meals, the employee was not facilitating the master's business, and the master was not responsible for damages resulting from his negligence while on such trips. *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016; *Gewanski v. Ellsworth,* 166 Wis. 250, 164 N. W. 996; *Bloom v. Krueger,* 182 Wis. 29, 195 N. W. 851. However, where by the contract of employment it is made the duty of the master to transport the servant from his home, or other designated place, to the place of his work, the relation of master and servant exists during the course of such transportation. *Ewald v. Chicago & N. W. R. Co.,*

*supra,* and cases there cited. And under the workmen's compensation act it is generally held that where by the contract of employment it is made the duty of the master to transport the employee to and from his work, injuries received by him in the course of such transportation grow out of and are incidental to his work. *Rock County v. Industrial Comm.* 185 Wis. 134, 200 N. W. 657; *Littler v. Geo. A. Fuller Co.* 223 N. Y. 369, 119 N. E. 554; *Sala v. American Tobacco Co.* 93 Conn. 82, 105 Atl. 346; *In re Donovan,* 217 Mass. 76, 104 N. E. 431.

From this we see that, under ordinary circumstances, it is the business of the employee to present himself at the place of employment, and while going thereto he is in the prosecution of his own business. Where, however, by the contract of employment the master undertakes to transport the employee to the place of his work, the trip is made in the prosecution of the master's business.

By the contract of employment here under consideration Burg did not undertake to transport Rottenbach from his home to the garage. By the terms of that contract, however, Burg did agree to permit Rottenbach to use one of his cars in going back and forth. The question is whether during these trips the car was being driven to facilitate the business of Rottenbach or Burg.

The car was not being driven in the prosecution of Burg's business unless it was Burg's business to transport Rottenbach from his home to the garage. This cannot be said to have been Burg's business unless he assumed it by virtue of the contract of employment. While by that contract it was agreed that Rottenbach might use one of his cars, that fell far short of imposing upon Burg the duty of transporting Rottenbach back and forth. Such trips were still made in the prosecution of Rottenbach's and not Burg's business. By the contract of employment Burg simply agreed to extend to Rottenbach the use of the automobile to

facilitate the trip. What effect this had upon Rottenbach's compensation does not appear. We do not know whether he worked for less wages because of the use of the automobile, or not. It has been held that where the servant paid for the use of the automobile in going to and from his meals in the form of lower compensation, he became the bailee of such automobile while on such trips. *Fisher v. Fletcher,* 191 Ind. 529, 133 N. E. 834. However, the influence which the use of the automobile has upon the compensation to the employee cannot be a controlling consideration. The controlling consideration is whether, while upon such trips, the automobile is being used in the prosecution of the master's or the servant's business. Where it appears that the servant pays for the use of the automobile, the purpose of its use is more clearly disclosed, and that can be its only significance. In this case the master simply agreed to permit the servant to use one of his automobiles in going between his home and the garage. This does not amount to an assumption of the duty on the part of the master to transport the servant to and from his home to the place of employment. It goes no further than to permit the servant to use an automobile belonging to the master while making such trips. Such trips, however, continued to be the business of the servant, whether he paid for the use of the automobile or whether its use was extended to him as a matter of accommodation. It seems plain that from the facts so far considered it cannot be held that at the time of the accident the automobile was being driven in the prosecution of the defendant Burg's business.

However, reliance is placed upon other circumstances, which will now be considered, to establish the fact that the automobile at the time of the accident was being driven in the prosecution of Burg's business. In the evening Rottenbach customarily drove the car to his home and kept it there during the night so that he might use it upon his return to

the garage in the morning. At times Burg got night calls to haul in cars that were stalled on the road. Upon such occasions he sometimes called Rottenbach, who had the car at his home, to go out and haul in the stalled car. It is said that this justifies the conclusion that Rottenbach was given the use of the car so that he might have it at his home in order to respond to calls of this nature, thus facilitating and promoting Burg's business. It does not appear that this consideration entered into the original contract. It seems to have been a custom which grew up after Rottenbach entered Burg's employ. It may readily be seen that when Burg got a night call, realizing that Rottenbach had one of his cars at hand, if the necessities or conveniences of the occasion required, he could call up Rottenbach and ask or direct him to respond to the call. It is plain that while so responding the car was used in the promotion of Burg's business and that he was responsible for Rottenbach's negligence on such occasions. There might be circumstances where this fact would throw light upon the question of whether the car was being used in the prosecution of Burg's business upon trips like the one here in question. Such might be the case if there was doubt concerning the primary purpose of Rottenbach's possession of the car. If that primary purpose was that Rottenbach might have a car handy for responding to such calls, then in driving it back and forth from his home to the garage it might be said that it was all in the prosecution of the master's business. However, it appears that the primary reason for Rottenbach's possession of the car was to facilitate Rottenbach's business, and the fact that Rottenbach's possession of the car incidentally resulted at times in the facilitation of Burg's business cannot characterize the trips made from the home to the garage as trips in the prosecution of Burg's business. We think it clear that at the time of the accident the automobile was not being driven in the prosecution of Burg's

business, and that there is no ground upon which to base his liability to the plaintiff.

*By the Court.*—The judgment against the defendant Leo Burg is reversed, and cause remanded with instructions to dismiss the action as to him.

A motion for a rehearing was denied, with $25 costs, on October 14, 1930.