Kathy J. DOERING, as representative of the Estate of Kurt A. Doering, and Kathy J. Doering, Plaintiffs-Respondents,

v.

State of Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant,†

SCHLUETER COMPANY and The Travelers Insurance Company, Defendants-Appellants.†

Court of Appeals

*No. 93–2025. Submitted on briefs February 18, 1994.—Decided September 14, 1994.*

(Also reported in 523 N.W.2d 142.)

†Petition to review denied.
†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Daniel J. Kelley* of *Schoone, Fortune & Leuck, S.C.* of Racine.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Richard Briles Moriarty*, assistant attorney general.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Michael G. Laskis* of *Foley & Lardner* of Madison and *William L. Seymour* of *Seymour, Kremer, Nommensen & Morrissy* of Elkhorn.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J.   Schlueter Company and the Labor and Industry Review Commission (LIRC) appeal from a circuit court judgment reversing LIRC's order denying worker's compensation benefits to the estate of Kurt A. Doering. The court held that Doering's fatal injury, suffered while he was commuting from home to work, was compensable under the Worker's Compensation Act, ch. 102, STATS. Schlueter argues that Doering was not performing services growing out of and incidental to his employment at the time of his fatal accident as required under § 102.03(1)(c)1, STATS., and therefore it cannot be liable. We disagree and hold that under the facts and circumstances of this case, Doering's commute to work was incidental to his employment. Therefore, we affirm that portion of the circuit court judgment reversing LIRC's order. However, we reverse that portion of the judgment directing

LIRC to enter an order affirming the Administrative Law Judge's (ALJ) findings of fact, conclusions of law and order. Instead, we direct the trial court to set aside LIRC's order and remand the record to LIRC for further proceedings consistent with this opinion. *See* §§ 102.23(1)(e) and 102.24(1), STATS.

The case was submitted to LIRC on the following undisputed facts. Doering was employed as a salaried plant foreman with Schlueter, a manufacturer of storage tanks and power washing equipment for the food and dairy industry. As foreman, his duties included scheduling and expediting orders, supervising employees and making pickups from and deliveries to various customers. Schlueter gave Doering the use of a company pickup truck to make the pickups and deliveries.

Doering picked up items from customers two to three times per month and made three to four deliveries per month on average. Most of these pickups and deliveries occurred after normal work hours and occasionally on weekends. As a result, Schlueter allowed Doering to take the truck home after work. Schlueter paid for all of the operating expenses associated with the truck, including gas, maintenance and insurance. In addition, Doering was not required to reimburse Schlueter for any personal use of the truck.

On May 10, 1990, Doering was fatally injured in a collision while driving the truck from his home to work. At the time of the accident, he was using the truck for the purpose of commuting from home to work, as opposed to making a specific pickup or delivery.

Doering's widow, Kathy Doering, filed an action for worker's compensation pursuant to ch. 102, STATS. The ALJ found liability pursuant to § 102.03, STATS., concluding that Doering's fatal injury occurred during the course of his employment. Schlueter appealed the

decision to LIRC, which reversed the ALJ's determination and denied death benefits because it found that Doering was not performing services incidental to employment at the time of the injury. *See* § 102.03(1)(c)1. Doering then appealed LIRC's determination to Walworth County Circuit Court, which set aside LIRC's order by judgment dated June 23, 1993 and ordered LIRC to reinstate the ALJ's decision. Schlueter and LIRC (hereinafter "Schlueter") appeal from that judgment.

At the outset, the parties dispute the appropriate scope of our review on appeal. Schlueter argues that even though the case was submitted on undisputed facts, LIRC was forced to choose from competing inferences and that the inferences it chose constitute findings of fact.[1] As a result, Schlueter argues that we must affirm LIRC's decision as long as its findings are supported by credible and substantial evidence. *See* § 102.23(6), STATS. We reject Schlueter's assertion that the issue presented is factual in nature. LIRC's denial of worker's compensation benefits was based on its application of the statute and legal precedents to undisputed facts, rather than its resolution of competing factual inferences. Accordingly, the only question for this court is a question of law.

In the alternative, Schlueter argues that because the outcome in this case turns on the application and interpretation of ch. 102, STATS., and applicable court decisions, LIRC's conclusion must be given great deference. LIRC's construction of a statute is entitled to

---

[1] According to Schlueter, "Such inferences include that Doering was traveling from home to work, that his use of the vehicle amounted to a form of added compensation, that it was Doering who controlled the vehicle and that the injury did not arise out of the employment."

great deference where it has special expertise and experience interpreting the statute. *DILHR v. LIRC,* 161 Wis. 2d 231, 246, 467 N.W.2d 545, 550 (1991). Schlueter contends that LIRC has developed significant expertise in determining when an employee is acting within the scope of his or her employment under § 102.03, STATS., *see, e.g., Nigbor v. DILHR,* 120 Wis. 2d 375, 384, 355 N.W.2d 532, 537 (1984), and the circumstances under which injuries to traveling employees are covered, *see, e.g., Goranson v. DILHR,* 94 Wis. 2d 537, 548-49, 289 N.W.2d 270, 276 (1980).

We agree in part with LIRC's statement of the appropriate scope of our review. It is true that LIRC has great expertise in applying ch. 102, STATS., and in determining when an employee is acting within the scope of his or her employment. *Nigbor,* 120 Wis. 2d at 384, 355 N.W.2d at 537. Accordingly, we give great deference to LIRC's application and interpretation of the statute. However, it is well established that the general deference given to an agency's application of a particular statute does not apply when the agency's determination conflicts with prior case law established by our supreme court. *Pabst v. Department of Taxation,* 19 Wis. 2d 313, 323-24, 120 N.W.2d 77, 82 (1963); *see also Klusendorf Chevrolet-Buick, Inc. v. LIRC,* 110 Wis. 2d 328, 331-32, 328 N.W.2d 890, 892 (Ct. App. 1982). Therefore, we must independently review the application of prior case law to the set of undisputed facts presented.

Although we defer to a certain extent to LIRC's conclusion, we affirm the circuit court because LIRC's conclusion conflicts with prior decisions of our supreme court. *See id.* at 332, 328 N.W.2d at 892. Accordingly, based on our review of the relevant case law, we con-

477

clude that Doering was performing services growing out of and incidental to his employment at the time of his fatal injury, and therefore is entitled to benefits under the Worker's Compensation Act.

We begin with the relevant statutes. Section 102.03, STATS., sets forth the conditions for liability under the Worker's Compensation Act. Section 102.03(1)(c)1 states that liability exists against an employer:

> Where, at the time of the injury, the employe is performing service growing out of and incidental to his or her employment.

Certain types of travel are expressly determined to be incidental to employment:

> Any employe going to and from his or her employment in the ordinary and usual way, while on the premises of the employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, any employe going between an employer's designated parking lot and the employer's work premises while on a direct route and in the ordinary and usual way . . . is performing service growing out of and incidental to employment.
>
> . . ..
>
> Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose.

Section 102.03(1)(c)2 & (1)(f).

Under § 102.03, STATS., therefore, the typical employee going to or from work is not covered until he or she reaches the employer's premises. An employee going to work is ordinarily in the prosecution of his or her own business, not performing services incidental to employment. *Brown v. Industrial Comm'n*, 236 Wis. 569, 571, 295 N.W. 695, 695 (1941). However, courts have created many exceptions to this so called "coming and going" rule. In particular, our supreme court has recognized that an employee's injury suffered while going to or from work is compensable under worker's compensation where the employer provides the transportation as part of the employment or pays for the expenses related to the employee's travel. *See generally Rock County v. Industrial Comm'n*, 185 Wis. 134, 200 N.W. 657 (1924); *Selmer Co. v. Industrial Comm'n*, 264 Wis. 295, 58 N.W.2d 628 (1953); *Krause v. Western Casualty & Sur. Co.*, 3 Wis. 2d 61, 87 N.W.2d 875 (1958).

In *Rock County*, the county, as part of an employment contract, provided transportation to construction employees who did not desire to camp at the job site or use their own cars to commute. The claimant employee was injured while riding home with a coemployee. The coemployee used his own car at the county's request to transport employees when county transportation was unavailable. *Rock County*, 185 Wis. at 136, 200 N.W. at 657.

The supreme court held that the employee's injury was compensable because the employment contract specifically provided for transportation for employees and therefore the accident occurred while the employee was performing services growing out of or incidental to

his employment. *Id.* at 137, 200 N.W. at 658. In doing so, the court stated:

> Although the county was not literally in control of the car when the accident occurred, it did control and exercise the choice of the vehicle to be used. From a legal point of view the liability is the same as if the claimant had been injured while riding in the car generally used for the purpose.. . . [W]hen the applicant was riding from his place of work to his home in a vehicle which under his contract for transportation was provided for him by his employer, and designated as the one to be used, he was riding as an employee of the county, and the danger was incidental to his employment.

*Id.* at 139, 200 N.W. at 658-59.[2]

*Rock County* is representative of what Professor Larson refers to as the "employer's conveyance" exception to the coming and going rule. 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 17.00 (1993). Under this exception, "[i]f the trip to and from work is made in a truck, bus, van, car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course of employment." *Id.* at § 17.11. The rationale behind this exception is that the risks of

---

[2] Both parties point out that if the same facts arose under the present statute, the case might fall within the exception to worker's compensation coverage which now applies to employer-sponsored car pools and other similar ride-sharing programs. *See* § 102.03(1)(c)3, STATS. We decline to decide that issue specifically because such facts are not presently before us. However, we do recognize that § 102.03(1)(c)3 appears to preclude the application of the employer's conveyance exception to the coming and going rule in situations where the sole purpose of the conveyance "is the mass transportation of employes to and from employment." *See id.*

the employment continue throughout the journey and are under the employer's control. *Id.* at §§ 17.00, 17.11.

As identified by *Rock County*, therefore, two important factors inherent in the employer's conveyance exception to the coming and going rule are: (1) the employer must agree to provide for the transportation and (2) the employer must exercise certain control over the means of transportation, such as the vehicle to be used or the destination traveled. In subsequent cases involving injuries to employees while commuting, the supreme court relied on these factors to determine whether the injury was compensable under the Worker's Compensation Act.

In *Brown*, the claimant employee was a used car salesman whose employer allowed him to use any one of the used cars on the lot for going to and from work if one was available. The employee was injured when a car he used exploded in his driveway when he was attempting to leave home to go to work. *Brown*, 236 Wis. at 569-70, 295 N.W. at 695. Our supreme court denied compensation based on the fact that there was no agreement or undertaking on the part of the employer to transport the employee, the employer was not obligated to furnish a car, and the employer could not control the means of transportation. *Id.* at 570-71, 295 N.W. at 695-96.

In *Kerin v. Industrial Comm'n*, 239 Wis. 617, 2 N.W.2d 223 (1942), a union electrician residing in Sun Prairie and working in Evansville was killed in a car accident while on the way home from work. According to the union contract, the employer was required to pay all transportation, board and lodging when union electricians were sent to work outside of their union jurisdiction. However, the employer had no obligation to transport employees to and from their homes or

481

work except at the beginning and the end of a job outside of the city. The employee elected to commute to and from work in his own car each day and received an additional $1.50 per day in lieu of board and lodging pursuant to the union contract. *Id.* at 617-18, 2 N.W.2d at 223-24. The supreme court denied compensation benefits based on the fact that the employer did not agree to transport the employee as part of the union contract and could not control the means of transportation. *Id.* at 624, 2 N.W.2d at 226.

In *Selmer,* an employee was fatally injured in an automobile accident while traveling from a job site on a road that he would use in returning either to his employer's place of business or to his home. The employee's foreman directed him to go to the job site to do some repair work and told him that he would receive an extra hour of pay to cover his transportation costs. The foreman also informed the employee that he could go home after finishing the work if it was close to quitting time. *Selmer,* 264 Wis. at 296-97, 58 N.W.2d at 628-29.

The supreme court concluded that the employee's injury was compensable because the employer was obligated to transport the employee to his place of work and home. *Id.* at 297, 58 N.W.2d at 628. The court found the case analogous to *Rock County,* despite the fact that the employee was riding in his own car rather than the employer's car. *Id.* at 297-98, 58 N.W.2d at 629. The court reasoned:

> In each of the cases the employer controlled and exercised the choice of the vehicle to be used, and in each claimant was riding from his place of work to his home in a car which, under his contract for transportation, was provided for him and designated by the employer as the one to be used.

*Id.* at 298, 58 N.W.2d at 629. The court further stated:

> The situation is no different than it would have been had [the employee] used the employer's car to reach the place of work and, at the direction of the foreman, had driven it to his home.. . . The [employee's] car was the instrumentality chosen by the employer for the carrying on of its work and in compliance with the agreement to transport [the employee] to the place of work and from there to his home.

*Id.* at 297, 58 N.W.2d at 629. Further, the court distinguished *Kerin* on the ground that in *Kerin* it had not been established that there had been an agreement on the part of the employer to transport the employee to and from work, whereas in *Selmer* there was. *Id.* at 298-99, 58 N.W.2d at 629-30.

Applying the analysis used by the supreme court in *Rock County, Brown, Kerin* and *Selmer* to the facts of this case, we conclude that Doering was performing services growing out of and incidental to his employment within the meaning of § 102.03(1)(c)1, STATS., at the time of his fatal injury. It is undisputed that Schlueter provided Doering with a company truck so that the truck would be available to Doering during the work day, after work and on weekends for pickups and deliveries. Schlueter allowed Doering to use the truck to drive to and from work so that the truck would be available to make pickups and deliveries when necessary. Like the employers in *Rock County* and *Selmer*, Schlueter furnished the means of transportation to and from work. Although Schlueter was not literally in control of the truck when the accident occurred, it did control and exercise the choice of the vehicle to be used. *See Rock County*, 185 Wis. at 139, 200 N.W. at 658.

Although the supreme court analyzed *Kerin, Brown* and *Selmer* within the context of *Rock County* and the employer's conveyance exception, these cases are better understood as separate and distinct from employer's conveyance cases such as *Rock County*. This was first recognized in the dissenting opinion in *Selmer*, where three dissenters identified the distinction that in employer's conveyance cases the employer is obligated to *transport* the employee, whereas in cases such as *Kerin* and *Selmer* the employer agreed to *reimburse* the employee for the cost of the transportation. *Selmer*, 264 Wis. at 301-02, 58 N.W.2d at 631. The *Selmer* dissent argued that *Kerin* stands for the proposition that where an employee is given a transportation allowance to cover the use of his or her own car going to and from work, the payment of such allowance does not cause the employee's commute to be covered under worker's compensation. *Id.* Because the employer in *Selmer* was reimbursing the employee for transportation costs, the dissent argued that he was not covered pursuant to the purported holding of *Kerin*.

Schlueter argues that the present case is controlled by *Kerin* and, like the *Selmer* dissent, contends that *Kerin* holds that the payment of an employee's transportation costs is not enough to trigger coverage under worker's compensation for an injury sustained during the employee's commute. Schlueter therefore argues that Doering cannot be covered under worker's compensation because it was merely paying for his transportation costs by providing him with a truck. Schlueter asserts that we must overrule the supreme court's decisions in *Kerin* and *Brown* in order to hold otherwise.

We agree with Schlueter and the *Selmer* dissenters that cases such as *Selmer* and *Kerin* are factually

distinguishable from the cases allowing coverage under the employer's conveyance exception to the coming and going rule. However, we disagree with Schlueter's broad reading of *Kerin*—that the payment of travel expenses by the employer is never grounds for triggering coverage under worker's compensation.

First, Schlueter's characterization of the holding of *Kerin* is based in part on language in the *Selmer* dissent which has never been adopted by a majority of the supreme court. Second, the supreme court in *Krause*, a case decided after *Selmer*, expressly recognized with favor the very exception which Schlueter contends does not apply. In *Krause* the supreme court stated:

> The general rule, therefore, is that an employee going to or from work is not in the course of his employment while off the premises of the employer. However, an exception to this rule is generally recognized where the employee's compensation covers the time involved in going to or from his work, *or an allowance is made for the cost of transportation.* [Emphasis added.]

*Krause*, 3 Wis. 2d at 68, 87 N.W.2d at 880 (citing 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 16.20 (1952)).[3] Therefore, the supreme court recog-

---

[3] In *Krause v. Western Casualty & Sur. Co.*, 3 Wis. 2d 61, 67, 87 N.W.2d 875, 879 (1958), the court reiterated its recognition of the validity of the "personal comfort" exception to the coming and going rule. Under that exception, employees who, within the limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of their employment. *Id.* In *Krause*, the employer informed several employees that he was going to a nearby restaurant for coffee and asked if they wanted to go along. The employees were in the past paid during such breaks. Several employees accepted the invitation and accompanied the employer in his car. On the way

nized the payment of transportation expenses as a legitimate exception to the coming and going rule.

For the purpose of analysis, there is no logical distinction between the employer's payment of travel expenses and furnishing an automobile for the employer's use and paying the related expenses. *See* LARSON at § 16.31 n.53. Larson notes that in the majority of cases involving a deliberate and substantial payment for the expense of travel, or the provision of a vehicle under the employee's control,[4] courts have held that the journey is held to be in the course of employ-

---

to the restaurant the claimant employee was injured when the car was involved in a collision. *Id.* The court held that the coffee break fit within the personal comfort doctrine. *Id.* at 68, 87 N.W.2d at 879.

Both the trial court and Doering rely heavily on the following language from *Krause* for support:

> We consider the correct rule to be that, where the employer provides the transportation for an employee going to and from work and such employee is injured while making use of such transportation for such purpose, such injury occurs while the employee is in the course of his employment.

*Id.* at 70, 87 N.W.2d at 880.

We agree with LIRC that such language must be read in context with the facts of the case and, when so read, the language is inapplicable to the present case. We agree that "it is apparent that the court was referring to situations in which the employe was traveling to or from work for a business errand or for personal comfort, but not to daily commuting between an employe's home and work place." Therefore, this "rule," which on its face appears to apply to the facts here, is properly limited to similar comfort doctrine cases.

[4] *See, e.g., Fisher Contracting Co. v. Industrial Comm'n,* 555 P.2d 366, 368-69 (Ariz. Ct. App. 1976); *Industrial Comm'n v. Lavach,* 439 P.2d 359, 361 (Colo. 1968); *Gwin v. Liberty Northwest Ins. Corp.,* 803 P.2d 1228, 1229 (Or. Ct. App. 1991).

486

ment. *Id.* at § 16.31. Larson suggests that these cases are correct because they qualify under the rationale that employment should be deemed to include travel when the travel is a substantial part of the service performed. *Id.* Under this rationale, the furnishing of a vehicle or payment of transportation expenses by the employer cannot be considered alone as a basis for triggering coverage; rather, we must examine the entire employment picture.

Here, Schlueter provided Doering with the truck in part so that he could better accommodate customers by making deliveries after normal hours and on weekends. As part of this arrangement, from which the employer clearly benefitted, Doering necessarily had to bring the truck back to work from home so that he could use it during the day.[5] The company paid for all of the operating expenses, including gas, oil, maintenance and insurance. Schlueter's assignment of the truck to Doering for travel after normal work hours and payment of all expenses is strong evidence that Schlueter intended the employment relationship to continue while Doering was traveling to and from work. Considering the total employment picture, Doering's travel was an essential part of his employment.

---

[5] The trial court's decision relied in part on Larson's statement that "[i]f the employee as part of his job is required to bring with him his own car . . . for use during his working day, the trip to and from work is by that fact alone embraced within the course of employment." 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 17.51 (1993). In the present case, however, Doering was not required to bring his own vehicle to work; he brought his employer's truck to work. Therefore, we do not consider this to be an "employee conveyance" case to which this statement applies. *See id.*

At first glance the supreme court's recognition of the "payment for travel expense" exception in *Krause* appears to conflict with its decisions in *Kerin* and *Brown*, which denied coverage where the employer paid for the employees' travel expenses. However, using Larson's analysis, these cases are easily harmonized under the payment for travel expense exception. As stated earlier, coverage under this exception depends on the relative importance of the travel to the employment, and the payment of travel expenses alone does not automatically make the travel part of the employment. LARSON at §§ 16.30-31. In both *Brown* and *Kerin*, the supreme court did not consider the travel to be a substantial part of the employment and therefore the payment of transportation expenses did not trigger coverage under worker's compensation.

In *Kerin*, for example, the court noted that "a mere additional daily allowance to the employee, which he is at liberty to use for board and room at his place of employment or for travel to and from work in the employee's car" was not enough to expand the scope of the employment. *Kerin*, 239 Wis. at 624, 2 N.W.2d at 226. The employee's travel was not essential to his job; after quitting time, Kerin had nothing else to do for his employer. *Id.* at 618, 2 N.W.2d at 224. Similarly in *Brown*, the employee's use of the employer's car was "[a]t most . . . an allowance in the way of pay which placed no obligation on the employer to transport [the employee] to and from work." *Brown*, 236 Wis. at 570, 295 N.W. at 695. The travel expenses paid by the employer merely constituted an allowance and bore no relation to his employment.

In sum, we conclude that under both the employer's conveyance analysis used by the supreme

court in *Rock County, Brown, Kerin* and *Selmer*, or under the payment of transportation expenses exception recognized by Professor Larson and by the supreme court in *Krause*, Doering is entitled to worker's compensation benefits because he was performing services growing out of and incidental to his employment at the time of the accident. Neither *Brown* nor *Kerin* dictates otherwise; both are distinguishable under either analysis. Accordingly, we conclude that LIRC acted in excess of its powers in reaching a decision that conflicts with the decisions of our supreme court. *See* § 102.23(1)(e)1, STATS.

Finally, we disagree with Schlueter's assertion that extending worker's compensation under the facts of this case would lead to absurd results. We caution that our decision should not be read to suggest that liability arises under § 102.03, STATS., where an employer provides a vehicle to its employee and the employee is injured while using the vehicle for other, personal purposes. In this case, the undisputed inference was that Doering was injured while commuting to work.

Although we affirm the circuit court's reversal of LIRC's order, we must reverse that portion of the judgment directing LIRC to issue an order affirming the ALJ's findings of fact, conclusions of law and order because the court lacks statutory authority to do so. According to § 102.23(1)(e)1, STATS., the court may either confirm or set aside LIRC's order or award. If the court sets aside the order, it may either recommit the case to LIRC for further proceedings or it may enter the proper judgment upon LIRC's findings. Section 102.24(1), STATS. Accordingly, we direct the trial court to set aside LIRC's order and remand the record to

LIRC for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.